1  Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
2  Todd Logan (SBN SBN 305912)
tlogan@edelson.com
3
EDELSON PC
4  123 Townsend Street, Suite 100
San Francisco, California 94109
5  Tel: 415-212-9300
Fax: 415-373-9435
6

7

8

9                    **UNITED STATES DISTRICT COURT**

10            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12

13  RBB2, LLC, a California limited
liability company, individually and        Case No.
14  on behalf of all others similarly
situated,

15
                        *Plaintiff,*
16

17        *v.*

18
CSC SERVICEWORKS, INC., a
19  Delaware corporation,

20
                        *Defendant.*
21

22
      **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**
23
        Plaintiff RBB2, LLC ("RBB2" or "Plaintiff") brings this Class Action
24
Complaint and Demand for Jury Trial against Defendant CSC ServiceWorks, Inc.
25
("CSC" or "Defendant") for its practice of unlawfully underpaying Plaintiff and
26
the putative Class on their laundry service contracts, and to obtain redress for all
27

28

CLASS ACTION COMPLAINT                    1

1  persons injured by its conduct. Plaintiff alleges as follows upon personal

2  knowledge as to itself and its own acts and experiences, and as to all other matters,

3  upon information and belief, including investigation conducted by its attorneys.

**NATURE OF THE ACTION**

4

5      1.    Defendant CSC is one of the largest coin-operated laundry businesses

6  in the country, largely providing services to multi-unit apartment buildings.

7      2.    CSC's market dominance is largely attributable to its practice of

8  buying out its competition. Most notably, CSC has merged the operations of

9  Coinmach, Mac-Grey, and Continental Laundry Services—all major players in the

10  coin-operated business—under its current entity.

11      3.    After CSC acquired its competitors (and the existing customer

12  contracts along with them) it disregarded the actual terms of those contracts and

13  imposed a 9.75% "administrative fee" on its services, thereby systematically

14  shortchanging building owners on contracted-for revenue shares.

15      4.    Plaintiff and members of the Class never agreed to pay the so-called

16  administrative fee and such a fee was never included in contracts with CSC (or the

17  companies acquired by CSC).

18      5.    Plaintiff RBB2, individually and on behalf of all others similarly

19  situated, brings this lawsuit against CSC for breach of contract, and unjust

20  enrichment.

**PARTIES**

21

22      6.    Plaintiff RBB2, LLC is a corporation organized and existing under the

23  laws of the California with its principal place of business located in this District.

24      7.    Defendant CSC ServiceWorks, Inc. is a corporation organized and

25  existing under the laws of the State of Delaware with its principal place of business

26  located at 303 Sunnyside Boulevard, Suite 70, Plainview, New York 11803.

27

28

CLASS ACTION COMPLAINT         2

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9.     This Court has personal jurisdiction over Defendant because it conducts business throughout this District.

10.     Venue is proper in this District because a substantial part of the events giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District. 28 U.S.C. § 1391(b).

**COMMON FACTUAL ALLEGATIONS**

*The History and Growth of CSC*

11.     CSC is the largest provider of coin-operated laundry machines to commercial and residential clients in the United States. Defendant provides laundry equipment to colleges and universities, laundromats, and to laundry facilities in residential multi-unit buildings.

12.     Over the last few years, CSC has grown tremendously by acquiring other players in the coin-operated laundry business. Indeed, in its latest form, CSC is the result of a $1.4 billion acquisition and merger of Coinmach and AIR-serv by Pamplona Capital Management—a private hedge fund sponsor. In part, CSC has acquired Laundry Tek, RAF Equipment Co., Sparkle Solutions (Canada's third-largest laundry operator), and Continental Laundry Services (Pittsburgh's largest laundry operator). In early 2014, CSC completed its acquisition of Mac-Gray Corp.—one of its largest competitors—for $584 million. Mac-Gray provided debit-card and coin-operated laundry machines for multi-unit buildings, including apartments, condominiums, and university student dorms, and operated its laundry

1  machines in 44 states. These acquisitions helped CSC reach a major milestone by

2  expanding its network to over one million laundry machines worldwide.

3      13.    CSC has continued to expand its market dominance by acquiring

4  commercial laundry and appliance leasing companies around the country. In so

5  doing, CSC has eliminated its competition and limited the options available in the

6  market.

7  *CSC Breached Contracts by Charging Undisclosed Administrative Fees*

8      14.    As a result of its mergers and acquisitions, CSC now services all

9  previous laundry service contracts and agreements that its predecessors—like Mac-

10 Grey, Coinmach, and Continental, among other numerous unnamed companies

11 (collectively, the "Original Installers")—entered into with individuals and

12 businesses.

13     15.    Under these agreements, the Original Installers entered into long-term

14 agreements to install coin-operated laundry machines in Plaintiff's and Class

15 members' buildings for use by residents. The Original Installers maintained the

16 machines, collected payment from them, and processed any refunds.

17     16.    In return, Plaintiff and members of the Class (collectively, the

18 "Landlords") received a share of the net revenue generated by the laundry

19 machines.

20     17.    As described above, CSC began a campaign to eliminate competitors

21 and consolidate market share. Once consolidated, and knowing that Landlords

22 lacked any alternative service providers, CSC began breaching its contracts with

23 the Landlords by collecting a 9.75% administrative fee not provided for under its

24 contracts.

25     18.    In a May 2017 letter to the Landlords, CSC announced it was

26 imposing a 9.75% "administrative fee" calculated from gross revenues. CSC

27 explains that more than half of the administrative fee covers its *own* costs like

28

CLASS ACTION COMPLAINT                    4

1  billing processing, refund processing, website maintenance, clothing claim

2  processing, and commission check processing.

3       19.     But, the "administrative fee" includes items CSC is not allowed to

4  deduct from the Landlords. At most, the Landlords' contracts allow CSC to deduct

5  expenses attributable to vandalism and all applicable fees and/or taxes.

6       20.     To soften the Landlords' backlash, CSC explained that the 9.75%

7  administrative fee amounts to approximately ten cents per machine per day.

8       21.     But, on its face, CSC's calculation was misleading because a 9.75%

9  administrative fee would only rarely equate to ten cents per machine per day and

10  can easily reach twenty cents per machine per day. For example, in a 32-day

11  collection period, CSC charged RBB2 a $69.42 administrative fee from its 12

12  machines. Had CSC calculated the administrative fee based on ten cents per

13  machine per day, CSC would have assessed only a $38.40 fee—over half of what

14  was actually charged.

15       22.     While CSC claims that the administrative fee covers necessary costs

16  related to its operation and features new products and services that benefit the

17  Landlords, it is nothing more than an attempt to withhold contractually guaranteed

18  revenue from the Landlords.

19       23.     Equally troubling is CSC's approach to withholding taxes from the

20  Landlords by using the administrative fee. According to CSC's website, 16% of

21  the administrative fee includes taxes. But, CSC fails to explain how this fee

22  somehow accounts for various tax rates in each state in which CSC conducts

23  business, and remarkably, why the fee includes a value-added tax (VAT) that is not

24  even imposed in the United States.

25       24.     Worse yet, CSC's administrative fee forces or "crams" unwanted

26  products and services onto the Landlords. For instance, CSC released a new

27  product called the CSC "technology suite." The technology suite is a client portal

28

CLASS ACTION COMPLAINT       5

1   that purportedly allows the Landlords to, *inter alia,* place maintenance requests and

2   view payment details. The Landlords—who have already contracted for the

3   services they pay for—are charged by CSC for this service even if they don't want

4   it or if they don't use it.

5      25.   Similarly, 25% of the administrative fee includes "vandalism &

6   security coverage" that ostensibly gives the Landlords insurance-like coverage for

7   vandalism to CSC-owned laundry machines. Landlords are charged this fee even if

8   they *already have coverage* from other sources.

9      26.   The Landlords never agreed to the imposition of an administrative fee

10   nor the additional products and services it "crams." In fact, the Landlords'

11   contracts with CSC and the Original Installers never included such a fee nor

12   allowed CSC to deduct for the costs and products it includes under the

13   "administrative fee." Indeed, CSC's imposition of this new administrative fee begs

14   the question of what services the Landlords have already paid for.

15      27.   As it stands, CSC's administrative fee is extra-contractual and not

16   bargained for, and CSC's unilateral conduct to reduce payments under its revenue-

17   sharing contracts have cost Landlords nationwide each thousands of dollars in

18   revenue.

19                    **FACTS SPECIFIC TO PLAINTIFF RBB2**

20      28.   Plaintiff RBB2 is a real estate management company that owns and

21   manages a multi-unit apartment building in Bakersfield, California.

22      29.   RBB2 entered in a long-term contract with CSC whereby it leased its

23   laundry rooms to CSC so that it could install its laundry machines and collect

24   money from their use.

25      30.   On or around May 2017, CSC sent a letter to RBB2 announcing that it

26   will begin deducting a 9.75% "administrative fee" from its laundry machines'

27   gross collections. The letter explained that the fee will amount to approximately

28

CLASS ACTION COMPLAINT                    6

1   $0.10 per machine per day.

2      31.    RBB2 never agreed to an administrative fee. In fact, its contracts with

3   CSC didn't allow for such a fee or the costs, and products and services it purports

4   it covers.

5      32.    RBB2 did not agree to or sign any amendments to its contracts, or

6   otherwise authorize the implementation of an administrative fee.

7      33.    CSC's conduct has cost, and will continue to cost, RBB2 thousands of

8   dollars annually in lost revenue.

9                          **CLASS ALLEGATIONS**

10     34.    **Class Definition:** Plaintiff RBB2 brings this action pursuant to

11  Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of itself and Class of

12  similarly situated individuals, defined as follow:

13
         All individuals and entities residing in the State of California who were
14       assessed an administrative fee by CSC ServiceWorks, Inc.

15  Excluded from the Class are: (1) any Judge or Magistrate presiding over this action

16  and members of their families; (2) Defendant, Defendant's subsidiaries, parents,

17  successors, predecessors, and any entity in which the Defendant or its parents have

18  a controlling interest and its current or former employees, officers and directors;

19  (3) persons who properly execute and file a timely request for exclusion from the

20  Class; (4) persons whose claims in this matter have been finally adjudicated on the

21  merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and

22  (6) the legal representatives, successors, and assigns of any such excluded persons.

23     35.    **Numerosity**: The exact number of Class members is unknown and not

24  available to Plaintiff at this time, but it is clear that individual joinder is

25  impracticable. Class members can be identified through Defendant's records.

26     36.    **Commonality and Predominance**: There are many questions of law

27

28

1  and fact common to the claims of Plaintiff and the putative Class, and those

2  questions predominate over any questions that may affect individual members of

3  the Class. Common questions for the Class include, but are not necessarily limited

4  to the following:

      a.    Whether Defendant's conduct constituted a breach of contract;

      b.    Whether Defendant was unjustly enriched; and

      c.    Whether Plaintiff and Class members agreed to Defendant's administrative fee.

37. **Typicality:** Plaintiff's claims are typical of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

39. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

40. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair

1   and efficient adjudication of this controversy because joinder of all parties is

2   impracticable. The damages suffered by the individual members of the Class will

3   likely be relatively small, especially given the burden and expense of individual

4   prosecution of the complex litigation necessitated by Defendant's actions. Thus, it

5   would be virtually impossible for the individual members of the Class to obtain

6   effective relief from Defendant's misconduct. Even if members of the Class could

7   sustain such individual litigation, it would still not be preferable to a class action,

8   because individual litigation would increase the delay and expense to all parties

9   due to the complex legal and factual controversies presented in this Complaint. By

10   contrast, a class action presents far fewer management difficulties and provides the

11   benefits of single adjudication, economies of scale, and comprehensive supervision

12   by a single Court. Economies of time, effort and expense will be fostered and

13   uniformity of decisions ensured.

14

15   **FIRST CAUSE OF ACTION**
     **Breach of Contract**
     **(On Behalf of Plaintiff and the Class)**

16

17   41.     Plaintiff incorporates the foregoing allegations as if fully set forth

18   herein.

19   42.     Plaintiff and Class members entered into lease agreements with CSC,

20   whereby CSC leased laundry rooms from Plaintiff and the Class members and in

21   return it paid rent according to a formula set out in its lease. Specifically, CSC

22   agreed to pay Plaintiff and the Class members a portion of the revenue it collected

23   from its laundry machines.

24   43.     CSC installed and collected money from its laundry machines on

25   Plaintiff's and the Class member's properties.

26   44.     CSC breached its contracts with Plaintiff and the Class members when

27

28

CLASS ACTION COMPLAINT                    9

1  it failed to make the proper rent payments. In other words, CSC breached its

2  contract with Plaintiff and the Class members by imposing an "administrative fee."

3  Plaintiff and the Class members never agreed to such a fee or the deductions

4  imposed under this fee.

5       45.    CSC's breach of contract has directly caused Plaintiff and the Class

6  members economic injury in the form of deficient payment owed to them by CSC.

### SECOND CAUSE OF ACTION
### Unjust Enrichment
### *In the Alternative to Breach of Contract*
### (On Behalf of Plaintiff and the Class)

10      46.    Plaintiff incorporates the foregoing allegations as if fully set forth

11  herein, excluding paragraphs 41-45.

12      47.    Plaintiff and the Class members have conferred a benefit upon CSC in

13  the form of money it improperly withheld from Plaintiff and the Class.

14      48.    CSC has knowledge and/or appreciates the benefits conferred upon it

15  by Plaintiff and the Class members.

16      49.    Under principles of equity and good conscience, CSC should not be

17  permitted to retain money belonging to Plaintiff and the Class members that it

18  unjustly withheld as a result of its wrongful conduct.

19      50.    Accordingly, Plaintiff and the Class members seek restitution and

20  disgorgement of all amounts by which CSC has been unjustly enriched.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff RBB2, individually and on behalf of the Class

prays for the following relief:

a.      An order certifying the Class as defined above, appointing Plaintiff

RBB2 as the representative of the Class, and appointing its counsel as Class

Counsel;

b.      An order declaring that Defendant's actions, as set out above, constitute a breach of contract, and, in the alternative, unjust enrichment;

c.      An award of actual damages;

d.      An award of reasonable attorneys' fees and costs; and

e.      Such other and further relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**RBB2, LLC,** individually and on behalf of all others similarly situated,

Dated: July 6, 2018                By: /s/ Todd Logan
                                           One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94109
Tel: 415-212-9300
Fax: 415-373-9435

*Attorney for Plaintiff and the Class*

CLASS ACTION COMPLAINT                11