# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RBB2, LLC, a California limited liability company, individually and on behalf of all others similarly situated,** | **1:18-cv-00915-LJO-JLT** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS** |
| **v.** | **(Doc. 14)** |
| **CSC SERVICEWORKS, INC., a Delaware Corporation** | |
| **Defendants** | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

In July 2018, Plaintiff RBB2, LLC ("Plaintiff") filed a putative class action suit against Defendant CSC ServiceWorks, Inc. ("Defendant") alleging claims for breach of contract and unjust enrichment. Defendant filed a motion to dismiss, which Plaintiff opposes. After an extended briefing period requested by the parties, the matter was taken under submission. For the reasons set forth below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## III. <u>BACKGROUND</u>

### A. Defendant's Business and Imposition of an Administrative Fee

The following background is taken from Plaintiff's complaint. Defendant delivers coin-operated laundry services to multi-unit residential and commercial clients around the country. (Cmplt., ¶ 11.) Defendant has been expanding its market dominance by acquiring commercial laundry and appliance leasing companies around the country and has eliminated its competition and, thus, the options available in the market for such services. Once it had consolidated the market share, and knowing that landlords lacked alternative laundry service providers, Defendant began breaching its contracts with landlords by instituting and collecting a 9.75% Administrative Fee not provided for under its contracts. (Cmplt., ¶ 17.)

In May 2017, Defendant sent a letter to the landlords it contracts with and announced it was imposing a 9.75% Administrative Fee which would be deducted from gross revenues. Defendant explained in its letter that more than half the Administrative Fee covers its own costs like billing processing, refund processing, website maintenance, clothing claim processing, and commission check processing. (Cmplt., ¶ 18.) Although Defendant claims its Administrative Fee covers necessary costs related to its operation and features new products and services that benefit landlords, Plaintiff alleges it

is nothing more than an attempt to withhold contractually guaranteed revenue from the landlords. (Cmplt., ¶ 22.)

**B.     Defendant's Agreement with Plaintiff**

Plaintiff is a real estate management company which owns and manages a multi-unit apartment building in Bakersfield, California. (Cmplt., ¶ 28.) Plaintiff entered into a long-term contract with Defendant whereby it leased its laundry room to Defendant so that Defendant could install its laundry machines and collect money from their use. (Cmplt., ¶ 29.) The contract, signed in February 2017, allows Defendant to rent space in Plaintiff's apartment complex to install, operate, and maintain pay-per-use laundry equipment. In return, Defendant agreed to pay Plaintiff rent in the form of income from the machines after having first deducted refunds, expenses attributable to vandalism on the equipment, and "all applicable fees and/or taxes, including, but not limited to, sales, use, excise, personal property or real estate taxes payable by [Defendant] in connection with the use and possession of the Leased Premises and the operation of the Equipment, an amount equal to: *28% of revenue, paid Monthly." (Doc. 14-3, p. 2, ¶ 3.)

In May 2017, Plaintiff received the "landlord letter" from Defendant regarding the 9.75% Administrative Fee Defendant would be deducting from the gross revenues payable to Plaintiff. (Cmplt., 30.) Defendant also posted a document on its website entitled "Understanding CSC's Administrative Fee" which explained 59% of the Administrative Fee would relate to charges for process of billing, refund processing, website maintenance, and clothing claim processing; 16% of the Administrative Fee would be comprised of costs associated with taxes such as purchase taxes, sales taxes, and "VAT taxes"; and 25% of the Administrative Fee would represent costs associated with processing vandalism cases and related external security costs and measures. (Doc. 21-1, p. 10.)

In July 2018, Plaintiff filed a putative class action suit on behalf of itself and all others similarly situated, alleging a claim for breach of contract and, alternatively, for quasi-contract seeking restitution and arguing the Administrative Fee was outside the parties' Agreement – that its imposition represented

a breach of contract. According to Plaintiff's managing member, William Dinino, Plaintiff normally receives a rent check from Defendant via U.S. mail. (Doc. 21-1, ¶ 3.) In July 2018, Plaintiff received a check from Defendant in the amount of $352.43, and an attachment to the check stated that it was "payment for period ending May 2018." (*Id.*, ¶ 4.) When processing the July check, Mr. Dinino attests he thought Plaintiff had already been paid for the May 2018 collections period, but Defendant had in the past issued additional credits or adjustments to the account, so receiving a second check was not unprecedented. (*Id.*, ¶ 5.) Mr. Dinino also thought perhaps the check was mislabeled and was in fact for a more recent collection period. (*Id.*, ¶ 5.) Mr. Dinino decided to cash the check on July 16, 2018, and then sought an explanation from Defendant. (*Id.*) After contacting his own attorneys about the check, Mr. Dinino placed a call to Defendant's representative on July 25, 2018, and learned the check was purportedly reimbursement for the Administrative Fee that had previously been withheld from Plaintiff's rent income. In its November 2018 Motion to Dismiss, Defendant argues, among other things, Plaintiff's claims are mooted by accepting the July reimbursement check which was the amount of the Administrative Fees previously withheld by Defendant.

After a stipulated extension to the briefing schedule, the parties' dispute over Defendant's Motion to Dismiss was taken under submission in February 2019. Pending before the Court presently is Defendant's Motion to Dismiss the complaint pursuant to Federal Rules 12(b)(1) and 12(b)(6).

//

//

//

//

//

//

//

//

# IV. <u>ANALYSIS</u>[1]

**A.    <u>Legal Standards</u>**

**1.    <u>Federal Rule 12(b)(1)</u>**

Ripeness and mootness pertain to a federal court's subject matter jurisdiction under Article III of the United States Constitution, thus they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989) (ripeness relates to a federal court's subject matter jurisdiction); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000) (mootness is jurisdictional). The party asserting federal subject-matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction on the court, or may attack the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. *Thornhill*, 594 F.2d at 733.

---

[1] While a court may not ordinary rely on matters outside the pleadings in deciding a Rule 12(b)(6) motion, under the incorporation by reference doctrine, a court may consider a document beyond the pleadings if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The complaint refers to and necessarily relies on the parties' lease Agreement and a document entitled "Understanding CSC's Administrative Fee." A complete copy of the parties' Agreement is attached to Defendant's motion to dismiss (Doc. 14-3, pp. 2-5), and the second document is attached to Plaintiff's opposition brief (Doc. 21-1, pp. 9-11); there is no dispute about the authenticity of either document. Therefore, the Court will consider these documents in ruling on Defendant's Motion to Dismiss.

## 2.    **Federal Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions. . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint...must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be

afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.      The Court's Jurisdiction under Rule 12(b)(1)**

**1.      Plaintiff's Claims are Ripe**

A claim is not ripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Some contracts contain notice provisions or notice-and-cure provisions that precondition filing a lawsuit for breach of the agreement on a duty to notify the breaching party of the alleged breach and, in the case of notice-and-cure provisions, to allow that party time to cure the purported breach. In cases where a party fails to abide by the notice provision, courts have held that party's subsequent claims for breach of contract are not ripe because the precondition for suit was not met. *See Delamater Corp. v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1181 (E.D. Cal. 2010); *Kagan v. Conseco Senior Health Ins. Co.,* No. 2:06-cv-801-GEB-EFB, 2006 WL 3039792, at * (E.D. Cal. Oct. 23, 2006) (failure to comply with contractual proof-of-loss requirement rendered breach of contract claim not ripe for adjudication).

The parties' Agreement includes the following provision ("paragraph H"):

> Either party may terminate this Agreement and recover damages, including but not limited to incidental and consequential damages if: a) The other party commits any material breach of this Agreement which is not capable of being remedied; or b) The other party commits a breach of this Agreement which is capable of being remedied and fails to remedy the breach within 30 days after receipt of written notice of the default or within such longer period as may be specified in the notice of default. The prevailing party shall be entitled to recover all costs and reasonable attorney's fees incurred to enforce the Lease.

(Doc. 14-3, p. 3, ¶ H.)

Defendant argues this provision contains a precondition to suit: Plaintiff was required to notify Defendant of any breach of the Agreement and provide Defendant an opportunity to cure its performance before any suit to recover damages was filed. As Plaintiff views imposition of the Administrative Fee as a breach of the contract, Defendant contends Plaintiff was required to notify Defendant of the purported

7

1  breach and afford time to cure. According to Defendant, Plaintiff did not satisfy this precondition, and

2  the lawsuit is not yet ripe for adjudication.

3      Plaintiff argues paragraph H only applies when either party seeks to terminate the Agreement and

4  recover damages. Because Plaintiff is not attempting to terminate the Agreement, the notice-and-cure

5  provision in paragraph H is inapplicable. Defendant responds the notice-and-cure provision applies to

6  the recovery of damages which would necessarily be triggered by initiating any litigation. According to

7  Defendant, the whole purpose of paragraph H is to prevent the need for expensive litigation which would

8  be undercut interpreting it as Plaintiff urges.

9      Under California law,[2] "[w]hen a contract is reduced to writing, the intention of the parties is to

10  be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. Where "contractual language

11  is clear and explicit and does not involve an absurdity, the plain meaning governs." *Am. Alt. Ins. Corp.*,

12  135 Cal. App. 4th 1239, 1245 (2006). "The words of a contract are to be understood in their ordinary

13  and popular sense," unless used in a legal or technical sense or assigned a specific meaning. Cal. Civ.

14  Code § 1644. The contract should be considered as a whole, "so as to give effect to every part, if

15  reasonably practicable, each clause helping to interpret the other." *Id.* § 1641.

16      The parties disagree as to whether paragraph H is relevant only in the event termination of the

17  Agreement is sought, or whether an attempt to recover damages alone – *i.e.*, a lawsuit for damages – is

18  encompassed by this provision. When parties dispute the meaning of specific contract language, "the

19  court must decide whether the language is 'reasonably susceptible' to the interpretations urged by the

20  parties." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 798 (1998). Any contract term susceptible to more

21  than one reasonable interpretation is ambiguous. *Id.*

22

23  _____

24  [2] The parties' Agreement provides it shall be construed according to the laws of the state in which the Premises are located. (Doc. 14-3, p. 3, ¶ 8.) The Premises are located Bakersfield, California; thus, California law governs this contract dispute. (Doc. 14-3, p. 2, ¶ 1.)

25

Paragraph H permits either party to "terminate this Agreement and recover damages" in two specifically outlined situations. Defendant argues paragraph H requires notice and an opportunity to cure breaches of the contract that can be remedied as a precondition to filing any suit to recover damages, regardless whether termination is sought. Paragraph H, however, is not reasonably susceptible to Defendant's interpretation for several reasons. First, words in a contract are to be construed in their plain, ordinary, popular or legal meaning. Cal. Civ. Code § 1644. The ordinary use of the conjunction "and" between the words "terminate this Agreement *and* recover damages" does not mean "or." In *Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625, (1986), the court discussed the meaning of "or" and its distinction from the word "and":

> Rules of construction allow the disjunctive "or" to be accorded its ordinary meaning so as to reconcile potential conflicts and give effect to each provision separated by the disjunctive. [citations omitted] The use of the word "or" in a contract phrase "protect or collect" in its ordinary sense marks an alternative such as "either this or that." To give the word another meaning such as "and" is sanctioned only when such construction is found necessary to carry out the obvious intent of the parties to a contract, when that intent "may be gleaned from the context in which the word is used." [citation omitted].

The English Oxford Dictionary defines "and" as a conjunction "used to connect words of the same part of speech, clauses, or sentences that are to be taken jointly" while the word, "or," as discussed in *Kelly*, is a conjunction meant to link alternatives – *e.g*., "either this or that." *See also* Oxford English Dictionary, https://en.oxforddictionaries.com/definition/or. Applying the term "and" in its common and ordinary meaning to this Agreement, paragraph H applies when a party seeks to terminate the Agreement *and* recover damages. If a party does not seek to terminate the agreement and seeks only to recover damages, by its plain language paragraph H does not apply.

Second, contracts are to be considered as a whole and their language interpreted in context. Cal. Civ. Code § 1641. Defendant contends paragraph H was obviously meant to require notice-and-cure opportunities prior to suit to reduce the possibility of expensive litigation over small breaches of the Agreement. Yet, paragraph H centers on the contours of the termination remedy available to the parties. Cancelling a contract is a distinct remedy not available for every type of breach under the common law.

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (1987) ("The law sensibly recognizes that although every instance of noncompliance with a contract's terms constitutes a breach, not every breach justifies treating the contract as terminated.").  In the absence of a contrary agreement by the parties, California law allows termination of a contract only if the breach can be classified as "material," "substantial," or "total."  *Id.*  Thus, if parties to an agreement intend to expand or limit this remedy, they must do so expressly.  Here, the substantive focus of paragraph H is to describe the conditions under which termination can be sought because those conditions are simultaneously more and less restrictive than California common law.  Specifically, paragraph H provides that only material breaches *that cannot be remedied* are cause for termination and recovery of damages without prior notice (more restrictive than California law which permits termination for any material breach without any notice-and-cure requirement); and a termination remedy is available for all other breaches (material or non-material which can be remedied) only after a notice-and-cure opportunity has been given (less restrictive than common law in the sense that parties may elect to terminate the agreement upon the occurrence of a non-material breach, so long as they give notice and an opportunity to cure, but more restrictive in the sense that to seek termination after a material breach, a notice-and-cure opportunity is required).  In context, the provision is focusing on the contours of the termination remedy and making alterations to the common law applicable to that remedy.  The language does not link or preface the filing of any suit seeking damages on notice and an opportunity to cure.

This interpretation of paragraph H is consistent with the other sections of the Agreement.  The preceding two paragraphs of the Agreement deal with Defendant's unilateral right to terminate the contract under specified conditions.  In paragraph F, if Plaintiff grants permission to individual units to install laundry equipment, or provides laundry hookups for the installation of laundry equipment, Defendant is entitled to (1) reduce the rent proportionally and receive a pro-rata refund for initial expenses, or (2) terminate the Agreement *and* recover damages for material breach of the Lease.  Paragraph G specifies other circumstances where Defendant alone is entitled to terminate the Agreement.

Then, in Paragraph H, the Agreement permits for the termination of the Agreement and recovery of damages by *either* party under conditions more expansive and more restrictive than California law would otherwise permit. Taken together, these paragraphs do not address preconditions to file any lawsuit to recover damages, they deal singularly with the conditions under which termination together with recovery of damages is warranted and permitted either by Defendant or by both parties. *Am. Alternative Ins. Corp.*, 135 Cal. App. 4th 1239, 1245 (2006) (contract must be interpreted in context, rather than interpreting a provision in isolation); Cal. Civ. Code § 1641.

This interpretation of paragraph H is also supported by the reasoning of other courts considering various notice-and-cure provisions. As noted by Plaintiff, the exact notice-and-cure provision at issue here was considered by the Northern District of Ohio in June 2018: that court determined "Section H explains the circumstances under which either Party may *terminate* the Lease Agreement and recover damages . . . Section H includes no mandates which would require [the plaintiff] to provide [the defendant] with notice of its Breach of Contract prior to filing suit." *Summit Gardens Assocs. v. CSC ServiceWorks, Inc.*, No. 1:17-cv-2553-DCN, Doc. 22, p. 9 (N.D. Ohio June 1, 2018). Where notice-and-cure provisions are specifically linked to termination of the agreement, courts have limited the applicability of those provisions to a cancellation remedy and not considered them a precondition to filing any suit for breach. *Advanced Thermal Sciences Corp. v. Applied Materials, Inc.* No. 07-cv-01384-JVS (JWJx), 2008 WL11338614, at *2-3 (C.D. Cal. July 1, 2008) (notice-and-cure provision is limited by its plain language as applicable only when a party is seeking termination of the agreement and is not a precondition to any suit for alleged breach). Similarly, where notice-and-cure provisions have been interpreted to be a precondition to filing suit for breach, the agreement's language was broad and not expressly tied to termination. *See, e.g., Jackson v. Atlantic Savings of Am.*, No. 13-cv-05755 CW, 2014 WL 4802879, at *6 (N.D. Cal. Sept. 26, 2014) (notice-and-cure provision precluding commencement, joining, or being joined to an action before notification and an opportunity to cure was a clear precondition of any action for breach of that agreement). For example, in *IP Global Investments Am.,*

*Inc. v. Body Glove IP Holdings, LP*, No. 2:17-cv-06189-ODW (ARG), 2018 WL 5983550, at *3-4 (C.D. Cal. Nov. 14, 2008), the court determined a notice-and-cure provision specifying that "in the event of any breach . . . the party alleging breach shall give written notice . . . [and] a reasonable period . . . to cure" was a precondition to *any* lawsuit for breach because the language was sweeping and lacked any limit on the consequences of noncompliance. The court reasoned the notice-and-cure requirement was not limited to instances where a party was seeking termination because the provision was structurally separate from the paragraph of the agreement dealing with the preconditions specific to termination.

Finally, even assuming the Court could conclude paragraph H was ambiguous (subject to two differing reasonable interpretations), there is no evidence in the record currently before the Court that could supply a basis to interpret the parties' intent – the Court would be left with the only contract cannon applicable in these circumstances: ambiguous contractual language is to be construed against the drafter, which here is Defendant. Cal. Civ. Code § 1654; *Rainier Credit Co. v. Western Alliance Corp.*, 171 Cal. App. 3d 255, 263 (1985) (legal maxim that an ambiguity is construed against the drafter is only to be used when there is no extrinsic evidence to aid in the interpretation or where the uncertainty cannot be remedied by other rules of construction). Nevertheless, the existence of subject matter jurisdiction is foundational and is a determination that can be revisited at any point in the litigation should evidence establish jurisdiction is lacking. Should extrinsic evidence – industry standards, for example – later be produced to support the reasonableness of Defendant's interpretation, the Court's conclusion as to paragraph H may be subject to further consideration at that time.

In sum, because Plaintiff does not seek termination of the Agreement, the notice-and-cure requirement of paragraph H is inapplicable. Plaintiff has not failed to meet a precondition to suit, and its contract claim is ripe.

**2.      Plaintiff's Claims are Not Moot**

Defendant argues after Plaintiff filed suit, Defendant cured the alleged breach within 30 days of service of the complaint by crediting the deduction of the disputed Administrative Fee and discontinuing

assessment of the Administrative Fee against Plaintiff for the remainder of the Agreement's term. According to Defendant, this payment effectively mooted Plaintiff's complaint.

Plaintiff contends the refund Defendant provided for the Administrative Fee was insufficient to cover all of Plaintiff's damages and, under the circumstances, was not intended to moot Plaintiff's claims. Although Plaintiff had already served its complaint on Defendant, which clearly noted Plaintiff's counsel of record, Defendant mailed a check directly to Plaintiff and not its attorney. The check itself did not indicate it was sent in relation to the lawsuit or that a condition of its deposit would extinguish Plaintiff's claims. Plaintiff maintains that, even assuming, this was not a "gotcha" attempt to moot the litigation by sidestepping Plaintiff's counsel of record, it does not fully reimburse Plaintiff the money it seeks and thus cannot moot its claims as Plaintiff maintains it is entitled to prejudgment interest, and may be entitled to attorney's fees, and litigation costs; the check Defendant sent did not reimburse Plaintiff for any of these costs.

Defendant responds it sent a check to Plaintiff to resolve the complaint quickly not to evade judicial review, and the payment fully refunded the Administrative Fee, "irrevocably eradicating the effects of the challenged action." Further, Defendant notes it has promised to cease charging Plaintiff the Administrative Fee, which makes it unreasonable to expect the conduct will be repeated. Finally, Defendant argues because Plaintiff's claim for breach of contract is moot, the class allegations are also moot and require dismissal.

Article III, § 2, of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving "the legal rights of litigants in actual controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (internal quotation marks and citation omitted). An actual controversy must be extant at all states of review, not merely at the time the complaint is filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). If an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," at any point during the litigation, the action

13

can no longer proceed and must be dismissed as moot. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990).

Though Plaintiff deposited the $352.43 check sent by Defendant, Plaintiff did not knowingly accept funds from Defendant as satisfaction of its claims; Plaintiff's claims are not moot. Defendant's argument the reimbursement check was an attempt to resolve a dispute with a business partner is belied by the circumstances. Defendant does not dispute the check was mailed directly to Plaintiff, not Plaintiff's attorneys, after the complaint was filed.[3] Defendant acknowledges by declaration that its July 10, 2018, payment to Plaintiff was made after it first learned of Plaintiff's federal lawsuit, filed on July 6, 2018. Despite knowing that litigation had already commenced, the $352.43 check Defendant sent to Plaintiff contains no explanation that it was a refund of the Administrative Fee or any indication that Defendant had discontinued charging the Administrative Fee. There is absolutely nothing to distinguish this check from any other rental check Plaintiff routinely receives from Defendant – Plaintiff did not know the check purported to be a settlement of Plaintiff's claims or even that it related to the disputed Administrative Fee. As such, this check cannot be characterized as attempt to resolve the dispute – *i.e.,* a settlement offer. Had the check been intended to resolve the dispute, it would have been accompanied by an explanation of what the check was for, how the amount was calculated, and a guarantee the Administrative Fee would not be charged in the future. Under these circumstances, the Court cannot construe Plaintiff's cashing of the check as acceptance of Defendant's purported attempt or offer to "resolve the dispute." *See generally*, *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972) (regardless of apparent manifestations of consent, inconspicuous provisions of which offeree is unaware are not binding); *Thompson v. Williams*, 211 Cal. App. 3d 566, 571 (1989) (accord and satisfaction requires, among other

---

[3] There is no evidence Defendant's counsel directed this check be sent directly to Plaintiff and thus no showing this violated any ethical rules prohibiting members of the bar from communicating directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer. Rules of Professional Conduct of the State of California, Rule 2-100.

things, that the offeree understands the transaction and accepts the sum knowingly); Fed. Rule of Civil Procedure 68 (allows defending party to submit an offer *with specified terms* and the costs then accrued). Instead, the Court construes this as a failed or rejected offer of settlement.[4]  An unaccepted settlement offer or offer of judgment of complete relief does not moot a plaintiff's case.  *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016); *Diaz v. First Am. Home Buyers Protection Corp.*, 732 F.3d 948, 950 (9th Cir. 2013).  Additionally, there is no calculation establishing that $352.43 is the entire Administrative Fee withheld by Defendant nor does this amount purport to include any court costs, so it is unclear whether this check represents *complete* relief of Plaintiff's contract claim.

And, even if the claims of Plaintiff, as the named representative, were moot prior to class certification, the putative class itself would be entitled to proceed to certification because its claims would not be moot.  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011); *Chen v. Allstate Insurance Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016).

Turning to Defendant's next argument, Plaintiff's claims are not moot on the ground of voluntary cessation.  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000).  The mere cessation of conduct is not itself sufficient to meet this burden; the difficulty or expense involved in reverting to prior and allegedly wrongful conduct are other factors to consider.  For example, in disability cases where a defendant has made structural changes to a property, claims under the Americans With Disabilities Act are often considered moot because cessation is costly and the possibility the behavior would recur is based on an "absurdity" that the defendant would "spend money to undue structural modifications it just paid to implement."  *Harty v. N. Lauderdale Supermarket, Inc.*,

---

[4] The sum of $352.43 shall be returned to Defendant if it has not already been done.

15

No. 14-62945, 2015 WL 4638590, at *5 (S.D. Fla. Aug. 4, 2015).  Here, however, there is no guarantee Defendant would not simply resume deducting the Administrative Fee.  The declaration offered by Defendant (Doc. 14-2, Weaver Decl., ¶ 8) states only that it has reimbursed Plaintiff the withheld fees and has currently discontinued charging the fee – there is no promise it has discontinued the Administrative Fee for the entire duration of the lease or that charges against income due members of the putative class are also going to be refunded and the Fee discontinued.  There is no expectation that a cessation of deducting the Administrative Fee will be permanent.  For these reasons, Plaintiff's claims are not moot.

**C.    Sufficiency of Plaintiff's Claims under Rule 12(b)(6)**

**1.    Plaintiff's Breach of Contract Claim is Sufficiently Pled**

Plaintiff alleges the Administrative Fee Defendant began deducting from Plaintiff's rental income was outside the scope of the parties' Agreement and its imposition was a breach.  The parties disagree whether this Administrative Fee may be considered "applicable fees . . . in connection with the use and possession of the Leased Premises and the operation of the Equipment" that Defendant is permitted to deduct as rent under paragraph 3 of the Agreement.

The Agreement provides the following provision ("paragraph 3"):

> 3. Lessee [Defendant] agrees to pay Lessor [Plaintiff] as rent (the "Rent") from the income of the Equipment, Monthly, in arrears, having first deducted refunds, expenses, attributable to vandalism on the Equipment (Lessee and Lessor responsible evenly which included labor, parts, and equipment*), all applicable fees and/or taxes, including, but not limited to, sales, use, excise, personal property or real estate taxes payable by Lessee in connection with the use and possession of the Leased Premises and the operation of the Equipment, an amount equal to: *28% of revenue, paid Monthly.*  *Please note variable commission scale based on actual gross income per machine per month on schedule A.

(Doc. 14-3, p. 2, ¶ 3 (emphasis added).)

Under California law, which governs the parties' Agreement, a plaintiff must plead four elements to adequately state a claim for breach of contract: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) damages to the plaintiff

as a result of the breach. *DCF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Plaintiff alleges Defendant breached the contract by deducting an Administrative Fee from Plaintiff's rental income, which is not the type of fee that can be properly deducted under the plain language of the Agreement. Defendant contends Plaintiff's breach claim is not viable because the contract unambiguously permits the Administrative Fee to be deducted from Plaintiff's rental income on the laundry machines under paragraph 3 – *i.e.*, no alleged breach based on Plaintiff's interpretation (that the Administrative Fee is outside the scope of paragraph 3) is sustainable as a matter of law.

When a dispute centers on a contract's terms, a breach of contract claim may be dismissed for failure to state a claim if the contract's terms are unambiguous such that the alleged conduct cannot, as a matter of law, constitute a breach of the contract. *See Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1117 (N.D. Cal. 2013). To make this determination, the court employs the cannons of contract interpretation. When the meaning of contract language is disputed, "the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Consolidated World Investments, Inc. v. Lido Preferred, Ltd.*, 9 Cal. App. 4th 373, 379 (1992). Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself, *United Teachers of Oakland v. Oakland Unified Sch. Dist.*, 75 Cal. App. 3d 322, 330 (1977), or from extrinsic evidence of the parties' intent, *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992).

The parties each maintain their contradictory interpretations are supported by the unambiguous, plain language of the Agreement.[5] Plaintiff argues the Administrative Fee Defendant deducted from Plaintiff's rental income is not a permitted "fee" under paragraph 3. Plaintiff argues the Administrative

---

[5] Based on the arguments presented, the only relevant question for the Court at this stage is the threshold question of whether Plaintiff's interpretation of the Agreement's language is reasonable. If it is not, the allegation of breach based on that interpretation is not viable, and the analysis ends. If it is reasonable, the allegation of breach is at least plausible, and it will be determined in later proceedings whether the language is ambiguous and what the parties intended the language to mean as a matter of law. *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992) ("If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?").

Fee encompasses Defendant's costs from its business website maintenance, billing processing, and Defendant's business and operating margins, but these are not costs "in connection with the use and possession of the Leased Premises and the operation of the Equipment," they are Defendant's business costs that have nothing to do with *the* Leased Premises and the operation of the Equipment at those premises. Plaintiff argues no reasonable reading of the Agreement can support an interpretation that Plaintiff agreed to subsidize every aspect of Defendant's business to ensure that its operating margins were sufficiently padded, and it is equally unreasonable to assume that Plaintiff could have intended at the time of contracting to pay a fee that only came into existence months after the contract was negotiated.

Defendant contends the Administrative Fee is comprised of taxes, vandalism costs, and administrative and other business costs that are plainly "in connection with" the use and possession of the Leased Premises and the operation of the Equipment as those items arose as part of Defendant's business, which includes the use and possession of the Leased Premises and the operation of the Equipment. Defendant also maintains Plaintiff paid the Administrative Fee for months before disputing it, and Plaintiff's course of performance is extrinsic evidence supporting Defendant's interpretation.[6]

When a defendant seeks dismissal of a contract claim as insufficiently pled because the alleged breach is predicated on a disputed interpretation of the contract language, the motion can be granted only if the contract language is *not* reasonably susceptible to the interpretation urged by the plaintiff in alleging conduct constituting a breach. *Consolidated World Investments, Inc. v. Lido Preferred, Ltd.*, 9 Cal. App. 4th 373, 379 (1992) ("When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over.").

---

[6] Extrinsic evidence may be considered to determine whether the words of a contract are reasonably susceptible to a particular meaning urged by either party before actually admitting any such evidence to assist with interpretation. *PG&E v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39-40 (1968). Extrinsic evidence includes, among other things, the parties' course of dealings and course of performance. Cal. Code Civ. Proc. § 1856(c); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 393 (2008).

Here, Defendant fails to establish the contract is not reasonably susceptible to Plaintiff's proffered interpretation. Considering the Agreement as a whole, it is not explicit and clear the "fees and/or taxes" deduction provision unambiguously encompasses Defendant's Administrative Fee. According to the Agreement, the "fees and/or taxes" that are deductible from the rental income are those payable by Defendant "in connection with the use and possession of *the* Leased Premises" and operation of the equipment. (Doc. 14-3, p. 2, ¶ 3.) The term "Lease Premises" is defined in Schedule A as the properties located at 2524 and 2510 Haley Street, Bakersfield, California. (Doc. 14-3, p. 5.) On its face, this provision allows a rental deduction only for fees and/or taxes payable by Defendant "in connection with" *the specific* "Leased Premises" as defined in the Agreement, not fees Defendant itself assesses against the rental income to cover its various operating expenses that may be related to the use of *any* laundry facility it leases and operates equipment. (*Id.*) Similarly, even to the extent "taxes" comprise an aspect of the Administrative Fee as explained in the document "Understanding CSC's Administrative Fee" (Doc. 21-1, pp. 9-12), they are not necessarily taxes assessed "in connection with" *the* specifically defined Leased Premises, but constitute a fee charged to Plaintiff to cover potential taxes Defendant may or may not encounter across all its various leased premises. Additionally, Plaintiff's course of conduct in paying the Administrative Fee for a period before filing the complaint may be relevant to show the provision is also reasonably susceptible to Defendant's interpretation, but it does not establish Plaintiff's interpretation is untenable which is required for dismissal at this stage.

Neither party has argued paragraph 3 is ambiguous, and the Court makes no finding in this regard. Whether paragraph 3 is susceptible to Defendant's interpretation (thus resulting in an ambiguity) or whether paragraph 3 is susceptible *only* to Plaintiff's interpretation will be determined at a later stage of the proceedings. At this stage, the Court need not delve into the next steps of the contract analysis: paragraph 3 is reasonably susceptible to Plaintiff's interpretation, and thus Defendant's alleged conduct in deducting from Plaintiff's rent an Administrative Fee pursuant to paragraph 3 plausibly alleges a breach of the Agreement.

Defendant also argues Plaintiff cannot seek a remedy for a breach that is not "material." Defendant is incorrect. Unless an agreement specifies differently, *cancellation* of a contract is not a remedy that can be pursued in the absence of a material breach. However, this does not mean that non-material breaches are not actionable – it only restricts the type of remedy that can be sought. Under California law, a party can institute suit for any type of breach of the agreement. *Borgonovo v. Henderson*, 182 Cal. App. 2d 220, 231 (1960) ("[a]ny breach, total or partial, which causes a measurable injury, gives the injured party a right to damages as compensation therefore." (quoting 1 Witkin, Summary of California Law, § 263, 7th ed., pp. 294-95)). It is irrelevant whether Plaintiff seeks damages for a material or non-material breach of the Agreement.

### 2. Plaintiff's Unjust Enrichment "Claim"[7] is Not Sufficiently Pled

Plaintiff's second cause of action is for "unjust enrichment" which Defendant urges the Court to dismiss as inconsistent with Plaintiff's allegations of an express contract. The parties dispute whether a quasi-contract claim seeking restitution can be pleaded along with an express breach of contract claim, even if pleaded as alternatives under Federal Rule of Civil Procedure 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").[8]

Plaintiffs two claims are indeed mutually exclusive for purposes of judgment and awarding damages: "[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contracting covering the same subject matter." *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996). However, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it

---

[7] Unjust enrichment is not a claim for relief, it is a general principle underlying various legal doctrines and remedies – it is synonymous with restitution. This claim is an implied-in-fact contract claim or a quasi-contract claim for which restitution is sought. *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).

[8] The parties are in basic agreement the claims are mutually exclusive for purposes of awarding damages or entering judgment.

was procured by fraud or is unenforceable or ineffective for some reason." *McBride*, 123 Cal. App. 4th at 388. Nevertheless, the two claims may be *pled* simultaneously as alternatives.

The parties' dispute as to pleading these claims appears to stem from some differences among district courts in this Circuit as to whether these two mutually exclusive claims may be properly pled as alternatives. *Compare, e.g., Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (a quasi-contract claim incorporating by reference an allegation of an express agreement defeats the quasi-contract claim) *with Ball v. Johanns*, No. 07-cv-1190-LKK-DAD, 2008 WL 269069, *3 (E.D. Cal. Jan. 29, 2008) (unjust enrichment claim not barred despite simultaneous claim for breach of contract). A close reading of those cases, however, shows the distinction among them turns on the precision of the pleadings rather than a disagreement as to the application of the law. When, as an alternative, a quasi-contract claim is stated along with a breach of contract claim, that quasi-contract claim *must* allege facts supporting such a claim – *i.e.*, that there is no express agreement or that any written agreement is unenforceable for some reason. In other words, while allegations of an express agreement in other parts of the complaint do not constitute "an admission against another alternative or inconsistent pleading in the same case," *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990), allegations of an express, enforceable agreement *under the umbrella of the quasi-contract claim* are fatal to that claim. *See Gerlinger*, 311 F. Supp. 2d at 856. A plaintiff must be precise in pleading these alternative claims.

Here, in pleading its quasi-contract claim, Plaintiff incorporates by reference all previous allegations which include the allegation of an express, enforceable agreement between the parties; this is fatal to the quasi-contract claim. (Cmplt., ¶¶ 41, 46.) This is not an incurable defect, but the facts pled to maintain the alternative claim must support that alternative. Plaintiff's alternative claim for unjust enrichment – which is really a quasi-contract claim for restitution – is dismissed with leave to amend. The parties are reminded this is a very simple and technical pleading defect: by all appearances, it should not be difficult to cure. As such, the Court will be disinclined to allow further amendment should Plaintiff choose to amend yet fail to heed the Court's discussion above; equally, the Court will look with disfavor

on a second motion to dismiss on this issue if the amended claim adequately pleads the facts necessary to support an alternative quasi-contract claim.

**D.     Motion to Strike the Class Allegations under Rule 12(f)**

Defendant argues the putative class allegations must be dismissed because the allegations make clear that the Rule 23(a) and (b) class certification requirements cannot be satisfied. Defendant notes there is no allegation the purported class members' leases are uniform, and even if there were, the individualized nature of the notice-and-cure provisions across the contracts would mean individualized issues would predominate. Defendant also contends Plaintiff cannot show that a class action is the superior method of resolving this dispute since most of the putative class members are commercial enterprises who have the resources to address their concerns outside a class action device.

Plaintiff contends Defendant's motion is premature and can only be granted if the complaint conclusively indicates a class action cannot be maintained. Plaintiff maintains the fact that there is no specific allegation of uniformity of the leases does not conclusively prove a class action cannot be maintained; and even if the leases are not uniform across the class, the key issue is that none permitted the Administrative Fee imposed. Further, Plaintiff argues, it does not have the burden to prove the Rule 23 elements of class certification at this stage.

Rule 12(f) permits the court to strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter," but this is usually invoked where the plaintiff seeks a form of relief that is not available as a matter of law. *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705 DMR, 2013 WL 1892337, at *4 (citing *Rosales v. Citibank, Federal Savings Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). Motions to strike must be viewed in the light most favorable to the nonmoving party; there must be no questions of fact that the claim or defense is insufficient as a matter of law and cannot succeed under any circumstances. *Tristar Pictures, Inc. v. Del Taco, Inc.*, No. 99-cv-07655-DDP, 1999 WL 33260839, at *1 (C.D. Cal. Aug. 31, 1999); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("[Rule 12(f)] motions are narrow in scope, disfavored in practice, and not calculated

readily to invoke the court's discretion."). With respect to putative class actions, there is a sizable body of caselaw finding dismissal of class allegations at the pleading stage to be premature in advance of a motion for class certification after some opportunity for discovery. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244-45 (C.D. Cal. 2011).[9]

While Defendant's concerns are clearly relevant to the class certification process under Rule 23, none of the arguments conclusively establish that a class action cannot be maintained as a matter of law such that striking the allegations under Rule 12(f) would be appropriate. It may well be that the leases are not uniform across the class and this may indeed preclude certification, but for purposes of pleading Plaintiff has alleged imposition of the Administrative Fee violated the lease agreements of the putative class members regardless of any other potential differences among the class members' lease agreements. (Cmplt., ¶¶ 26-27.) Construing the pleadings in Plaintiff's favor and accepting as true the factual allegations in the complaint, it is possible the Rule 23 certification requirements can be met, despite the relevant obstacles Defendant points out Plaintiff will necessarily need to hurdle at the certification stage. Dismissal of the class allegations at the pleading stage is premature, and Defendant's motion to strike under Rule 12(f) is denied.

## V. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss and Motion to Strike are GRANTED IN PART and DENIED IN PART as follows:

    a. Plaintiff's claim for "unjust enrichment" is DISMISSED with leave to amend;

    b. In all other respects, Defendant's Motion to Dismiss and Motion to Strike are DENIED;

2. Within 7 days from the date of this order, Plaintiff may elect to amend its complaint with respect **only** to its unjust enrichment claim;

---

[9] The *Cholakyan* court collected cases where courts have refused to dismiss or strike class allegations at the pleading stage.

23

3.    If Plaintiff fails to amend the complaint within 7 days, the claim for unjust enrichment will be dismissed with prejudice; and

4.    Defendant shall file the appropriate responsive pleading within 21 days from the date of this order.

IT IS SO ORDERED.

Dated:    __**March 13, 2019**__            _____**/s/ Lawrence J. O'Neill**_____
                                               UNITED STATES CHIEF DISTRICT JUDGE