Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94109
Tel: 415-212-9300
Fax: 415-373-9435

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RBB2, LLC, a California limited liability company, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>CSC SERVICEWORKS, INC., a Delaware corporation,<br><br>*Defendant.* | Case No. 1:18-cv-00915-LJO-JLT<br><br>Hon. Lawrence J. O'Neill<br><br>Magistrate Judge Jennifer L. Thurston<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff RBB2, LLC ("RBB2" or "Plaintiff") brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendant CSC ServiceWorks, Inc. ("CSC" or "Defendant") for its practice of unlawfully underpaying Plaintiff and the putative Class on their laundry service contracts, and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and as to all

other matters, upon information and belief, including investigation conducted by its attorneys.

## NATURE OF THE ACTION

1. Defendant CSC is one of the largest coin-operated laundry businesses in the country, largely providing services to multi-unit apartment buildings.

2. CSC's market dominance is largely attributable to its practice of buying out its competition. Most notably, CSC has merged the operations of Coinmach, Mac-Grey, and Continental Laundry Services—all major players in the coin-operated business—under its current entity.

3. After CSC acquired its competitors (and the existing customer contracts along with them) it disregarded the actual terms of those contracts and imposed a 9.75% "administrative fee" on its services, thereby systematically shortchanging building owners on contracted-for revenue shares.

4. Plaintiff and members of the Class never agreed to pay the so-called administrative fee and such a fee was never included in contracts with CSC (or the companies acquired by CSC).

5. Plaintiff RBB2, individually and on behalf of all others similarly situated, brings this lawsuit against CSC for breach of contract, or, in the alternative, a quasi-contract claim for restitution.

## PARTIES

6. Plaintiff RBB2, LLC is a corporation organized and existing under the laws of the California with its principal place of business located in this District.

7. Defendant CSC ServiceWorks, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 303 Sunnyside Boulevard, Suite 70, Plainview, New York 11803.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to

1  28 U.S.C. 1332(d)(2), because (i) at least one member of the Class is a citizen of a
2  different state than the Defendant, (ii) the amount in controversy exceeds
3  $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under
4  that subsection apply to this action.

5      9.    This Court has personal jurisdiction over Defendant because it
6  conducts business throughout this District.

7      10.    Venue is proper in this District because a substantial part of the events
8  giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated
9  from this District. 28 U.S.C. § 1391(b).

## COMMON FACTUAL ALLEGATIONS

### *The History and Growth of CSC*

12      11.    CSC is the largest provider of coin-operated laundry machines to
13  commercial and residential clients in the United States. Defendant provides
14  laundry equipment to colleges and universities, laundromats, and to laundry
15  facilities in residential multi-unit buildings.

16      12.    Over the last few years, CSC has grown tremendously by acquiring
17  other players in the coin-operated laundry business. Indeed, in its latest form, CSC
18  is the result of a $1.4 billion acquisition and merger of Coinmach and AIR-serv by
19  Pamplona Capital Management—a private hedge fund sponsor. In part, CSC has
20  acquired Laundry Tek, RAF Equipment Co., Sparkle Solutions (Canada's third-
21  largest laundry operator), and Continental Laundry Services (Pittsburgh's largest
22  laundry operator). In early 2014, CSC completed its acquisition of Mac-Gray
23  Corp.—one of its largest competitors—for $584 million. Mac-Gray provided debit-
24  card and coin-operated laundry machines for multi-unit buildings, including
25  apartments, condominiums, and university student dorms, and operated its laundry
26  machines in 44 states. These acquisitions helped CSC reach a major milestone by
27  expanding its network to over one million laundry machines worldwide.

13. CSC has continued to expand its market dominance by acquiring commercial laundry and appliance leasing companies around the country. In so doing, CSC has eliminated its competition and limited the options available in the market.

**CSC Breached Contracts by Charging Undisclosed Administrative Fees**

14. As a result of its mergers and acquisitions, CSC now services all previous laundry service contracts and agreements that its predecessors—like Mac-Grey, Coinmach, and Continental, among other numerous unnamed companies (collectively, the "Original Installers")—entered into with individuals and businesses.

15. Under these agreements, the Original Installers entered into long-term agreements to install coin-operated laundry machines in Plaintiff's and Class members' buildings for use by residents. The Original Installers maintained the machines, collected payment from them, and processed any refunds.

16. In return, Plaintiff and members of the Class (collectively, the "Landlords") received a share of the net revenue generated by the laundry machines.

17. As described above, CSC began a campaign to eliminate competitors and consolidate market share. Once consolidated, and knowing that Landlords lacked any alternative service providers, CSC began breaching its contracts with the Landlords by collecting a 9.75% administrative fee not provided for under its contracts.

18. In a May 2017 letter to the Landlords, CSC announced it was imposing a 9.75% "administrative fee" calculated from gross revenues. CSC explains that more than half of the administrative fee covers its *own* costs like billing processing, refund processing, website maintenance, clothing claim processing, and commission check processing.

19. But, the "administrative fee" includes items CSC is not allowed to deduct from the Landlords. At most, the Landlords' contracts allow CSC to deduct expenses attributable to vandalism and all applicable fees and/or taxes.

20. To soften the Landlords' backlash, CSC explained that the 9.75% administrative fee amounts to approximately ten cents per machine per day.

21. But, on its face, CSC's calculation was misleading because a 9.75% administrative fee would only rarely equate to ten cents per machine per day and can easily reach twenty cents per machine per day. For example, in a 32-day collection period, CSC charged RBB2 a $69.42 administrative fee from its 12 machines. Had CSC calculated the administrative fee based on ten cents per machine per day, CSC would have assessed only a $38.40 fee—over half of what was actually charged.

22. While CSC claims that the administrative fee covers necessary costs related to its operation and features new products and services that benefit the Landlords, it is nothing more than an attempt to withhold contractually guaranteed revenue from the Landlords.

23. Equally troubling is CSC's approach to withholding taxes from the Landlords by using the administrative fee. According to CSC's website, 16% of the administrative fee includes taxes. But, CSC fails to explain how this fee somehow accounts for various tax rates in each state in which CSC conducts business, and remarkably, why the fee includes a value-added tax (VAT) that is not even imposed in the United States.

24. Worse yet, CSC's administrative fee forces or "crams" unwanted products and services onto the Landlords. For instance, CSC released a new product called the CSC "technology suite." The technology suite is a client portal that purportedly allows the Landlords to, *inter alia,* place maintenance requests and view payment details. The Landlords—who have already contracted for the

services they pay for—are charged by CSC for this service even if they don't want it or if they don't use it.

25. Similarly, 25% of the administrative fee includes "vandalism & security coverage" that ostensibly gives the Landlords insurance-like coverage for vandalism to CSC-owned laundry machines. Landlords are charged this fee even if they *already have coverage* from other sources.

26. The Landlords never agreed to the imposition of an administrative fee nor the additional products and services it "crams." In fact, the Landlords' contracts with CSC and the Original Installers never included such a fee nor allowed CSC to deduct for the costs and products it includes under the "administrative fee." Indeed, CSC's imposition of this new administrative fee begs the question of what services the Landlords have already paid for.

27. As it stands, CSC's administrative fee is extra-contractual and not bargained for, and CSC's unilateral conduct to reduce payments under its revenue-sharing contracts have cost Landlords nationwide each thousands of dollars in revenue.

**FACTS SPECIFIC TO PLAINTIFF RBB2**

28. Plaintiff RBB2 is a real estate management company that owns and manages a multi-unit apartment building in Bakersfield, California.

29. RBB2 entered in a long-term contract with CSC whereby it leased its laundry rooms to CSC so that it could install its laundry machines and collect money from their use.

30. On or around May 2017, CSC sent a letter to RBB2 announcing that it will begin deducting a 9.75% "administrative fee" from its laundry machines' gross collections. The letter explained that the fee will amount to approximately $0.10 per machine per day.

31. RBB2 never agreed to an administrative fee. In fact, its contracts with

CSC didn't allow for such a fee or the costs, and products and services it purports it covers.

32.   RBB2 did not agree to or sign any amendments to its contracts, or otherwise authorize the implementation of an administrative fee.

33.   CSC's conduct has cost, and will continue to cost, RBB2 thousands of dollars annually in lost revenue.

## CLASS ALLEGATIONS

34.   **Class Definition:** Plaintiff RBB2 brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of itself and Class of similarly situated individuals, defined as follow:

> All individuals and entities residing in the State of California who were assessed an administrative fee by CSC ServiceWorks, Inc.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35.   **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Class members can be identified through Defendant's records.

36.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of

the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.    Whether Defendant's conduct constituted a breach of contract;

    b.    Whether Defendant's conduct entitles Plaintiff to restitution; and

    c.    Whether Plaintiff and Class members agreed to Defendant's administrative fee.

37.    **Typicality:** Plaintiff's claims are typical of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

38.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

39.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

40.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is

impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. Plaintiff and Class members entered into lease agreements with CSC, whereby CSC leased laundry rooms from Plaintiff and the Class members and in return it paid rent according to a formula set out in its lease. Specifically, CSC agreed to pay Plaintiff and the Class members a portion of the revenue it collected from its laundry machines.

43. CSC installed and collected money from its laundry machines on Plaintiff's and the Class member's properties.

44. CSC breached its contracts with Plaintiff and the Class members when it failed to make the proper rent payments. In other words, CSC breached its contract with Plaintiff and the Class members by imposing an "administrative fee."

Plaintiff and the Class members never agreed to such a fee or the deductions imposed under this fee.

45. CSC's breach of contract has directly caused Plaintiff and the Class members economic injury in the form of deficient payment owed to them by CSC.

**SECOND CAUSE OF ACTION**
**Quasi-Contract Claim for Restitution**
*In the Alternative to Breach of Contract*
**(On Behalf of Plaintiff and the Class)**

46. Plaintiff incorporates by reference Paragraphs 1–2, 5–13, 18, 20–21, 23, 25, 28, 30, 33, 34–40 above. All other Paragraphs above are excluded from this Second Cause of Action. Plaintiff asserts this Second Cause of Action *only in the alternative* to its First Cause of Action.

47. Based, in part, on CSC's affirmative representation that they would only be charged a limited set of fees—which did not include the administrative fee referenced in Paragraph 18 above—Plaintiff and the Class members allowed CSC to install laundry machines on their properties and to collect money from those machines.

48. In May 2017, CSC began to withhold money from Plaintiff and the Class members by unilaterally imposing the administrative fee. Plaintiff and the Class members never agreed to such a fee or the deductions imposed under this fee.

49. Had Plaintiff and the Class members known that CSC was going to charge the administrative fee, they never would have allowed CSC to install laundry machines on their premises.

50. Plaintiff and the Class were victims of CSC's "bait-and-switch" tactic. After CSC induced Plaintiff and the Class to partner with CSC by promising one set of fees, CSC decided to charge a different fee—the administrative fee—withholding money from Plaintiff and the Class. Thus, to the extent there was a

written agreement, it is unenforceable.

51. As a result, CSC was unjustly enriched.

52. Plaintiff and the Class members have conferred a benefit upon CSC in the form of money it improperly withheld from Plaintiff and the Class.

53. CSC has knowledge and/or appreciates the benefits conferred upon it by Plaintiff and the Class members.

54. Under principles of equity and good conscience, CSC should not be permitted to retain money belonging to Plaintiff and the Class members that it unjustly withheld as a result of its wrongful conduct.

55. Accordingly, Plaintiff and the Class members seek restitution and disgorgement of all amounts by which CSC has been unjustly enriched.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff RBB2, individually and on behalf of the Class prays for the following relief:

a. An order certifying the Class as defined above, appointing Plaintiff RBB2 as the representative of the Class, and appointing its counsel as Class Counsel;

b. An order declaring that Defendant's actions, as set out above, constitute a breach of contract, or, in the alternative, entitle Plaintiff and the Class members to restitution;

c. An award of actual damages;

d. An award of reasonable attorneys' fees and costs; and

e. Such other and further relief that the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**RBB2, LLC,** individually and on behalf of all others similarly situated,

Dated: March 20, 2019

By: /s/ Benjamin H. Richman
    One of Plaintiff's Attorneys

Benjamin H. Richman (*Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94109
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff and the Putative Class*