Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94109
Tel: 415-212-9300
Fax: 415-373-9435

*Attorneys for Plaintiff and the Putative Class*

Paul B. La Scala (SBN 186939)
plascala@shb.com
Shook, Hardy, and Bacon LLP
5 Park Plaza, Suite 1600
Irvine, California 92614
Tel: 949-475-1500
Fax: 949-475-0016

*Attorney for Defendant*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RBB2, LLC, a California limited liability company, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>CSC SERVICEWORKS, INC., a Delaware corporation,<br><br>*Defendant.* | Case No. 1:18-cv-00915-LJO-JLT<br><br>**ORDER GRANTING STIPULATED PROTOCOL RELATING TO THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

The parties to this matter stipulate and agree to the following concerning the production of documents and electronically stored information:

**I.  Scope**

a.  <u>General</u>. The procedures and protocols outlined herein govern the production of documents and electronically stored information ("ESI") by all parties to this matter.

b.  <u>Objective</u>. This Protocol is designed and shall be interpreted to ensure that, subject to any objections by the party producing documents or ESI ("Producing Party"), responsive, non-privileged documents and ESI are produced by the Producing Party with a minimum of unnecessary costs. To the extent reasonably practicable, the production of documents shall be conducted to maximize efficiency and minimize discovery costs. The terms of this Protocol shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information. Nothing in this document is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or the party requesting the documents or ESI ("Requesting Party"). This Protocol shall not enlarge the scope of discovery as imposed by the rules governing this matter, court orders, or as agreed to between the parties.

c.  <u>Limitations and Non-Waiver</u>. Nothing in this Protocol shall be deemed as a waiver of the right of any of the parties to: (1) object to the authenticity and/or admissibility of any document or ESI or (2) object to or seek relief from any Request for Production of Documents or other discovery request based on any legally valid objection or claim, including but not limited to objections based on relevance, proportionality, overbreadth, undue burden, lack of custody, control, or possession over the requested ESI, or application of the attorney work product doctrine, attorney client, or other privilege, or other legally justified reasons that authorize the producing party to withhold information. All

1 parties preserve their attorney-client, attorney work product, and other privileges
2 and protections, and there is no intent by the Protocol to in any way waive or
3 weaken these privileges and protections. All documents produced hereunder are
4 fully protected and covered by any protective orders entered by the Court in this
5 matter. Nothing contained in this Protocol is intended to or shall serve to limit a
6 party's right to conduct a review of documents and ESI for relevance, confidential
7 information, and/or privileged information before production to another party.

**II.     Identification of Responsive Documents and ESI**

    a.     <u>Custodians</u>. The parties shall exchange in writing a list of custodians most likely to have relevant ESI, including any third-party data sources. The parties shall meet and confer if any party reasonably believes that there are additional custodians most likely to have unique, relevant information.

    b.     <u>Culling</u>. The parties shall seek agreement via meet and confer on search terms, file types, date ranges, and/or technology-assisted review technologies to be used as a means of limiting the volume of documents and ESI to be reviewed for responsiveness. The parties may of course meet and confer regarding other methods to cull and limit the volume of documents and ESI.

    c.     <u>De-duplication</u>. Prior to production, the parties may de-duplicate emails across custodians. For clarity, no party should de-duplicate any emails unless they are identified as "family-level hash duplicate." In addition, in order to reduce unnecessary volume in the review and production of emails, the parties may utilize email threading, which means in instances in which a group of emails are captured in an email string, only the latest email in the string will be produced along with all attachments included in the email string. Emails containing unique attachments not otherwise contained in the inclusive email shall also be produced along with their parent email. Emails suppressed under this paragraph need not be reflected on the party's privilege log. Documents that are not emails or email

attachments shall be de-duplicated across custodians by hash where the hash is created from the contents of the file in addition to the file name.

**III. Production Format**

    a.    <u>TIFF/Native File Format Production</u>. The parties agree that all non-redacted versions of Excel spreadsheets (or similar spreadsheets created using a different software program), PowerPoint presentations (or similar documents created using a different software program), audio files, video files, and any executable files shall be produced in native format. All other documents will be produced as single-page TIFF images with corresponding multi-page text, or in native file format if applicable, and necessary load files. Native files, along with corresponding metadata, will be preserved. TIFF images will be of 300 dpi quality or better. The load files will include an image load file as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. In certain circumstances, variations to the production format specified in this Protocol may be necessary. In such circumstances, the parties will meet and confer regarding the production format.

    b.    <u>Metadata</u>. No party has an obligation to create or manually code fields other than Custodian and Duplicate Custodian that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain. The parties shall provide the following metadata fields associated with each document produced, to the extent they are reasonably available: Custodian,[1] Duplicate Custodian, File Path, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Modified, Hash Value (such as MD5 or SHA-1), File Size, File Extension, Document Type, Document

---

[1] Custodian may include a non-human data source, such as an archive.

1  Title, Bates Number Begin, Bates Number End, Attachment Begin, Attachment
2  End (or the equivalent thereof), and Group ID/Family ID.

   c. Production of hardcopy documents in the usual course of business, as well as production of ESI in the reasonably usable form set out in this Order, need not include any reference to the discovery requests to which a document or ESI may be responsive.

   d. <u>Native Files</u>. The parties agree that documents will be produced in the format set forth in Section III.a, although the Producing Party retains the option to produce ESI in native file format. Subsequent to the production of documents, with good cause, the Requesting Party may make a reasonable request from the Producing Party that certain imaged files be produced in native format.

   e. Any Party seeking to use, in any proceeding in this action, files produced in native format shall do so subject to the following:

   i. The original Bates number and confidentiality designation, if any, shall be stamped on each page of any *.tif image or hardcopy document representing the original native-format file.

   ii. Use of a file in native format, or use of a *.tif image or hardcopy document representing the original native-format file, shall constitute a representation that the file being used is an accurate and complete depiction of the original native-format file.

   f. <u>Structured Data</u>. To the extent possible, all exports of structured data or reports from databases will be produced in .csv file, Excel file, or other delimited format. For the sake of clarity and given the limitations in Excel, if the production includes more than 1,048,576 rows, it shall be made in .csv format.

   g. <u>Non-Searchable Data</u>. The parties agree that ESI or documents that contain text and cannot be searched by electronic means (including, but not limited to, image files or PDF files that are not text searchable) shall be processed with

1" = "1" "4835-6358-5179 v1" "" 4835-6358-5179 v1

OCR by the producing party. Text from original documents generated by OCR shall be stored in separate text files without formatting in a generic format using the same file naming convention and organization as the original file. Files containing text that are not able to be processed using OCR shall be manually reviewed for relevant information.

  h. <u>Document Numbering</u>. Each page of a produced document will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates Number for each page of each document will be created so as to identify the Producing Party. In the case of materials redacted or deemed confidential, a redaction or confidentiality designation may be "burned" onto the document's image. The confidentiality designation will be burned onto the document at a location that does not obliterate, conceal, or interfere with any information from the source document.

  i. <u>Claims of Confidentiality</u>. If the Producing Party produces ESI subject to a claim that it is protected from disclosure under a protective order or confidentiality order entered into by the parties, the Producing Party shall electronically "burn" the words "CONFIDENTIAL," or "FOR ATTORNEYS' EYES ONLY" onto each page of the document. Failure to comply with this procedure shall not waive any protection of confidential treatment.

  j. <u>Production Media</u>. The Producing Party may produce documents via a secure file transfer mechanism or on readily accessible computer or electronic media as the parties may hereafter agree upon, including secure password-protected electronic download (*e.g.*, SFTP), CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted and the Producing Party will provide a

decryption key to the Requesting Party in a communication separate from the production itself.

**IV. Assertions of Privilege**

    i. To limit the cost of a privilege review and make document production more efficient, the parties have agreed to adopt the following protocol with respect to handling responsive documents or ESI that may include privileged information. <u>Communications After Lawsuit Filed</u>. The parties agree that no party is required to list on a privilege log communications that occurred (or occur) after the date this lawsuit was filed.

    ii. <u>Communications with Outside Counsel</u>. The parties agree that no party is required to list on a privilege log communications between a party and (i) its outside counsel, (ii) an agent of outside counsel other than the party, (iii) any non-testifying experts, or (iv) with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts.

    iii. <u>Outside Counsel Work Product</u>. The parties agree that no party is required to list on a privilege log privileged materials or work product created or received by (i) its outside counsel, (ii) an agent of outside counsel other than the party, (iii) any non-testifying experts, or (iv) with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts. This provision extends to the attachments of privileged or work product emails, assuming the attachments themselves would otherwise be privileged or protected work product if standing alone.

    iv. <u>Redacted Documents</u>. Redacted documents need not be logged if the reason for the redaction and any other information that

7

would otherwise appear on a log is noted on the face of the document or in produced metadata.

b. <u>Format and Timeframe</u>. The Producing Party shall provide one or more privilege logs in Excel or a similar electronic form that allows text searching and organization of data. The privilege log shall be provided within 75 days following the production from which the privileged documents are withheld.

c. <u>Logging by Category</u>. Each party may choose to identify privileged discoverable information by category, provided that sufficient information is afforded to discern the nature of the claim for withholding production and the scope of the privileged discoverable information withheld.

d. <u>Email Chains</u>. For a chain of privileged emails, the Producing Party need include only one entry on the privilege log for the entire email chain and need not log each email contained in the chain separately. The privilege log entry for the email chain needs to provide in the applicable privilege log fields (1) the Bates number for the entire email chain, and (2) the author, recipient(s) and copyee(s) of only the last-in-time email.

e. <u>Metadata Logs</u>. To the extent applicable, each party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

f. Should a Receiving Party, in good faith, have reason to believe a particular entry on a metadata-generated privilege log is responsive and does not reflect privileged discoverable information or that a privilege category contains a document that is responsive and does not reflect privileged discoverable information, the Receiving Party may request and the Producing Party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

# V. General Provisions

a. <u>Responsive Documents and ESI Already Produced in Similar Litigation</u>. Defendant will not be required to change the format or metadata of documents or ESI already produced in similar litigation (e.g., customer contracts).

b. <u>Types of ESI That Need Not Be Preserved or Collected</u>. Parties need not preserve or collect ESI from the following sources absent good cause and substantial need shown by the Requesting Party:

   i. ESI deleted as a result of the routine, good-faith operation of an ESI system;
   ii. Backup data files maintained in the normal course of business for purposes of disaster recovery, including without limitation backup tapes, disks, SAN and other forms of media;
   iii. Unallocated data, slack space, deleted data, file fragments or other data accessible only by use of computer forensics;
   iv. Random access memory, temporary files or other ephemeral data;
   v. Online access data such as (without limitation) temporary internet files, history files, cache files and cookies;
   vi. Data in metadata fields frequently updated automatically as part of the usual operation of a software application, such as last-opened or last-printed dates;
   vii. Telephone voice messages unless they are transcribed in the ordinary course of business;
   viii. Text and instant messages;
   ix. Operating system files, executable files, network, server, software application or system logs;
   x. Files on the NIST list; and

1" = "1" "4835-6358-5179 v1" "" 4835-6358-5179 v1

xi. Legacy data from systems or software applications no longer in use when such data cannot be read or interpreted by systems or software applications currently in use.

 c. <u>Backup Data</u>. No Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery or any other purposes. Backup media, disaster-recovery media and permanent retention media shall be considered to be not reasonably accessible due to undue burden and/or cost. If a Party decides to voluntarily produce from one or more such sources, that Party will establish a reasonable approach under which such discovery will occur.

 d. <u>Discoverability and Admissibility</u>. This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Protocol shall be construed to affect the admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

  i. This Protocol does not imply that discovery produced under the terms herein is properly discoverable, relevant, or admissible in this or in any other litigation.

  ii. Additionally, nothing in this Protocol shall be deemed to waive or limit any party's right to object to the production of certain electronically stored information, or to move for an appropriate order on the ground that the sources are not reasonably accessible.

 e. <u>Modification</u>. To the extent compliance with this Protocol imposes an undue burden with respect to any procedure, source, or search term listed herein, the parties shall promptly confer in an effort to resolve the issue. Any practice or

10
PROTOCOL RELATING TO THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 1:18-cv-00915
1" = "1" "4835-6358-5179 v1" "" 4835-6358-5179 v1

1 procedure set forth herein may be varied by agreement of the parties, which will be
2 confirmed in writing, where such variance is deemed appropriate to facilitate the
3 timely and economical exchange of electronic data. Any party that seeks to deviate
4 from or exceed the discovery limits set forth herein must obtain leave of the Court
5 to do so unless all parties otherwise consent in writing.

  f. <u>Dispute Resolution</u>. The parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief. If the parties are unable to resolve the dispute after a good faith effort, the parties may seek Court intervention in accordance with the Court's procedures.

IT IS SO STIPULATED.

**RBB2, LLC**, individually and on behalf of all others similarly situated,

Dated: July 1, 2019  By: <u>/s/ Benjamin H. Richman</u>
      Benjamin H. Richman

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94109
Tel: 415-212-9300
Fax: 415-373-9435

Benjamin H. Richman*
brichman@edelson.com
Michael W. Ovca*
EDELSON PC
350 North LaSalle Street, 14th Floor

11
PROTOCOL RELATING TO THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 1:18-cv-00915

1" = "1" "4835-6358-5179 v1" "" 4835-6358-5179 v1

|   |   |   |
|---|---|---|
| 1 | | Chicago, Illinois 60654 |
| 2 | | Tel: 312-589-6370 |
|   | | Fax: 312-589-6378 |
| 3 | | |
| 4 | | *admitted *pro hac vice* |
| 5 | | |
| 6 | | **CSC SERVICEWORKS, INC.**, |
| 7 | | |
| 8 | Dated: July 1, 2019 | By: /s/ Paul B. La Scala |
|   | | Paul B. La Scala |
| 9 | | |
| 10 | | Paul B. La Scala (SBN 186939) |
|   | | plascala@shb.com |
| 11 | | Paul Williams (admitted *pro hac vice*) |
| 12 | | pwilliams@shb.com |
|   | | Shook, Hardy, and Bacon LLP |
| 13 | | 5 Park Plaza, Suite 1600 |
| 14 | | Irvine, California 92614 |
|   | | Tel: 949-475-1500 |
| 15 | | Fax: 949-475-0016 |
| 16 | | |
|   | | Matthew F. Williams (SBN: 323775) |
| 17 | | mwilliams@shb.com |
| 18 | | Shook, Hardy, and Bacon LLP |
|   | | One Montgomery Tower, Suite 2600 |
| 19 | | San Francisco, California 94104 |
| 20 | | Tel: 415-544-1900 |
|   | | Fax: 415-391-0281 |

21

IT IS SO ORDERED.

22

23    Dated: __**July 1, 2019**__                     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

1" = "1" "4835-6358-5179 v1" "" 4835-6358-5179 v1