| | |
|---|---|
| **RBB2, LLC, a California limited liability company, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CSC SERVICEWORKS, INC., a Delaware Corporation**<br><br>**Defendant.** | **1:18-cv-00915-LJO-JLT**<br><br>**MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION TO DISMISS**<br><br>**(ECF No. 31)** |

## I. **INTRODUCTION**

In July 2018, Plaintiff RBB2, LLC ("Plaintiff" or "RBB2") filed a putative class action suit against Defendant CSC ServiceWorks, Inc. ("Defendant" or "CSC") initially asserting claims for breach of contract and unjust enrichment arising from a 9.75% administrative fee ("Administrative Fee") Defendant unilaterally charged RBB2 and the putative class. Complaint, ECF No. 1 ¶¶ 1-5. Defendant filed a motion to dismiss, and the Court granted the motion in part, dismissing without prejudice the unjust enrichment claim. Memorandum Decision and Order, ECF No. 25. Plaintiff then filed the First Amended Complaint ("FAC") asserting claims for breach of contract, and in the alternative, a quasi-contract claim for restitution. ECF No. 26 ¶¶ 41-55. CSC answered the FAC and asserted the following counterclaims: (1) breach of contract, (2) quasi-contract claim for restitution in the alternative of breach of contract, and (3) for declaratory relief. ECF No. 27.

1

Under review is RBB2's motion to dismiss CSC's counterclaims. ECF No. 31. For the reasons set forth below, Plaintiff's motion to dismiss is GRANTED with leave to amend.

## II. <u>BACKGROUND</u>[1]

CSC delivers coin-operated laundry services to multi-unit residential and commercial clients around the country. ECF No. 26 ¶ 11. CSC has expanded rapidly by acquiring various commercial laundry and appliance leasing companies. *Id.* ¶ 13. CSC provides commercial laundry services to its clients, both through its contracts and the long-term contracts of the companies it acquired. *Id.* ¶¶ 14-15. Under these agreements, CSC pays a portion of the net revenue generated by the laundry machines as rent to RBB2 and the putative class (collectively "Landlords"). *Id.* ¶ 16. In a May 2017 letter to the Landlords, CSC announced it was imposing a 9.75% Administrative Fee calculated from gross revenues. *Id.* ¶ 18.

CSC explained in its letter that more than half of the Administrative Fee covers its own costs like billing processing, refund processing, website maintenance, clothing claim processing, and commission check processing. ECF No. 26 ¶ 18. Although CSC claims its Administrative Fee covers necessary costs related to its operation and features new products and services that benefit the Landlords, Plaintiff alleges it is nothing more than an attempt to withhold contractually guaranteed revenue from the Landlords. *Id.* ¶ 22.

*Laundry Room Lease Agreement Between CSC and RBB2*

RBB2 is a real estate management company which owns and manages a multi-unit apartment building in Bakersfield, California. *Id.* ¶ 28. RBB2 and CSC entered into a long-term contract where CSC installed laundry machines in RBB2's apartment complex. *Id.* ¶ 29. The contract, signed in

---

[1] Unless otherwise noted, the facts are taken from the FAC, ECF No. 26, and Defendant CSC Serviceworks, Inc.'s Answer and Counter-Claims, ECF No. 27. For purposes of the Plaintiff's motion to dismiss, all alleged material facts are construed in the light most favorable to the CSC. *See Coalition For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).

February 2017, allows CSC to rent space in RBB2's apartment complex to install, operate, and

maintain pay-per-use laundry equipment. Laundry Room Lease Agreement, ECF No. 14-3 ¶ 1. In

return, CSC agreed to pay RBB2 a percentage of the laundry machine revenue as rent. ECF No. 14-3

¶ 3. The lease agreement allows CSC to deduct certain costs and expenses associated with the laundry

service in calculating the rent due. ECF No. 27, Counterclaim ¶ 6.[2] Specifically, the lease agreement

provides:

> Lessee [CSC] agrees to pay Lessor [RBB2] as rent (the "Rent") from the income of the
> Equipment, Monthly, in arrears, having first deducted refunds, expenses attributable to
> vandalism on the Equipment (Lessee and Lessor responsible evenly which included
> labor, parts and equipment), all applicable fees and/or taxes, including, but not limited to,
> sales, use, excise, personal property or real estate taxes payable by Lessee in connection
> with the use and possession of the Leased Premises and the operation of the Equipment,
> an amount equal to: *28% of revenue, paid Monthly. *Please note variable commission
> scale based on actual gross income per machine per month on schedule A.

ECF No. 14-3 ¶ 3.

In May 2017, RBB2 received the "landlord letter" regarding the 9.75% Administrative Fee.

ECF No. 26 ¶ 30.

CSC claims that at the time it imposed the Administrative Fee, it offered to "waive any claims

to recoup previously incurred recoverable costs and expenses" which Plaintiff owed CSC. ECF No. 27,

Counterclaim ¶ 21. Also, CSC claims that when it implemented the Administrative Fee, it also

conferred additional benefits on RBB2 including increased coverage for vandalism, access to CSC's

new technology suite, and a waiver by CSC from back-charging previously uncollected costs. *Id.*,

Counterclaim ¶ 12. CSC further claims that by filing this lawsuit, RBB2 rejected CSC's offer to waive

collection of the past due amounts and also "rescind[ed] acceptance of the administrative fee . . . ." *Id.*,

Counterclaim ¶ 22. CSC contends that RBB2 has breached the lease agreement by failing to pay, remit,

---

[2] Because CSC's Answer and Counterclaim—ECF No. 27—has multiple sets of numbered
paragraphs, citations labeled "Counterclaim" refer to the counterclaims portion of the pleading starting
on page 10.

1  or return all amounts to which CSC is contractually entitled. *Id.*, Counterclaim ¶ 24. According to

2  CSC's counterclaim, "Independent of any specific language in the its laundry lease agreement, and in

3  accordance with the parties' course of dealing and customs in the industry [RBB2] understood that

4  CSC is . . . entitled to . . . [these] costs . . . ." *Id.*, Counterclaim ¶ 20.

5      CSC alleges breach of contract, and in the alternative, a quasi-contract claim for restitution

6  against RBB2. CSC also seeks a declaratory judgment stating that the imposition of the Administrative

7  Fee was proper under the lease agreement. *Id.*, Counterclaim ¶ 43.

8      RBB2 timely filed a motion to dismiss CSC's counterclaims. The Court has determined that the

9  motion to dismiss is suitable for decision on the papers under Local Rule 230(g). For the reasons stated

10  below, the Court grants RBB2's motion to dismiss with leave to amend the first two counterclaims. The

11  counterclaim for declaratory relief is dismissed as unnecessary and duplicative of the substantive causes

12  of action.

13                          **III. <u>ANALYSIS</u>**

14  **A.      <u>Legal Standards</u>**

15        **1.      <u>Federal Rule of Civil Procedure 12(b)(6)</u>**

16      A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations

17  set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a

18  cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

19  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) *overruled on other grounds*, *Bell*

20  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss for failure to state

21  a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in

22  the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor.

23  *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

24      To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim

25  to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc*., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.      Sufficiency of Plaintiff's Claims under Rule 12(b)(6)**

   **1.      CSC's allegations that RBB2 failed to refund putative overpayments does not state a plausible claim for breach of contract.**

CSC's breach of contract counterclaim essentially avers that because CSC has not historically deducted all of the allowable shared expenses and costs associated with its laundry services, it has consistently overpaid RBB2 in the form of rent. ECF No. 27, at 10-11. In its counterclaim, CSC now seeks to be made whole by these overpayments. *Id.*, at 11.

Under California law, which governs the parties' Agreement, a plaintiff must plead four elements to adequately state a claim for breach of contract: (1) the existence of a contract; (2) plaintiff's

performance or excuse for nonperformance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach. *DCF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). CSC alleges that RBB2 breached the contract by failing to pay, remit, or return all amounts to which CSC is contractually entitled. ECF No. 27 ¶ 24.

A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous. *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1117 (N.D. Cal. 2013). A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations. *United Teachers of Oakland v. Oakland Unified Sch. Dist.*, 75 Cal. App. 3d 322, 330 (1977). When the meaning of contract language is disputed, "the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Consolidated World Investments, Inc. v. Lido Preferred, Ltd.*, 9 Cal. App. 4th 373, 379 (1992). Parol evidence is admissible only to prove a meaning to which the contractual language is reasonably susceptible, not to directly contradict the express terms of the agreement. *Id.*

RBB2 argues that CSC's counterclaims are an attempt to retroactively charge the Administrative Fee. ECF No. 31, at 1. RBB2 contends that CSC is responsible for calculating the amount of rent it owes RBB2 and RBB2 takes no role in calculating this amount. *Id.* RBB2 further contends that CSC has never complained that it has overpaid RBB2. *Id.* Essentially, CSC asserts breach of contract by RBB2 failing to refund CSC for an unspecified amount for overpayments of rent. *Id.* The plaint terms of the contract are not reasonably susceptible to CSC's interpretation. CSC has not alleged that it requested a refund from RBB2 or that it ever notified RBB2 of the alleged overpayments. CSC fails to explain how its conduct of undercalculating the rent constituted a breach of contract by RBB2.

*CSC has not alleged that RBB2 has breached the plain terms of the lease agreement*

First, CSC acknowledges that RBB2's alleged breach does not violate the terms of the laundry lease agreement, but instead claims that RBB2 violated the parties' contract evidenced by their course of dealing. ECF No. 27, Counterclaim ¶ 8. Thus, by CSC's implicit admission, the written laundry lease

6

agreement does not impose a duty on RBB2 to pay, remit, or return amounts that CSC had allegedly

overpaid. ECF No. 27, Counterclaim ¶ 20 ("Independent of any specific language in its laundry lease

agreement, and in accordance with the parties' course of dealing . . . CSC is and was entitled to

payment for certain costs and expenses associated with CSC's provision of laundry equipment and

services . . .").

The written lease agreement states that CSC is the party responsible for calculating and paying

the rent to RBB2 after deducting allowable expenditures. ECF No. 14-3 ¶ 3. The lease agreement does

not impose a duty on RBB2 to calculate the rent or to calculate the taxes and fees CSC is allowed to

deduct when calculating the rent payment. *See* ECF No. 14-3. Accordingly, RBB2's failure to refund

CSC for amounts that it allegedly overpaid is not a breach of the plain terms of the written lease. The

remaining question is whether the parties' course of dealing created a duty for RBB2 to refund CSC's

alleged overpayments for rent.[3]

*Course of Dealing*

Under California law, the terms of a written contract may be explained or supplemented by

course of dealing or course of performance. *Simi Mgmt. Corp. v. Bank of America, N.A.*, 930 F. Supp.

2d 1082, 1098 (9th Cir. 2013) (citing Cal. Civ. Proc. Code § 1856(c)). "Course of dealing" is defined as

"a sequence of previous conduct between the parties to a particular transaction which is fairly to be

regarded as establishing a common basis of understanding for interpreting their expressions and other

conduct." *Id.* (quoting *In re CFLC, Inc.*, 166 F.3d 1012, 1017 (9th Cir. 1999)). Course of dealing

evidence may supplement a contract by providing evidence of the parties' intentions. *Simi Mgmt.*

*Corp.*, 930 F. Supp. 2d at 1098. However, the court will first attempt to ascertain the parties' intention

---

[3] Although an analysis of course of dealing is unnecessary to determine that CSC's breach of
contract counterclaim fails, the Court nonetheless analyzes this theory raised by CSC. *See O'Neill v.
United States*, 50 F.3d 677, 684 (1995) (holding that course of dealing and course of performance may
be considered even when the disputed contract terms are unambiguous).

solely on the written contract if possible. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018).

In *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018), the Ninth Circuit upheld the dismissal of a putative class action lawsuit filed by golf caddies against the professional golf association, PGA Tour, Inc. The golf association operated three tours of professional golf tournaments, and the association required the caddies to wear bibs which contained advertising during the events. *Hicks*, 897 F.3d at 1113. The caddies brought claims alleging that requiring them to wear the bibs violated various state and federal laws and constituted a breach of contract between the parties. *Id.* at 1114. The Ninth Circuit confirmed that the caddies' claims failed because they had consented to wear the bibs when they signed the "Caddie Registration and Regulations Form" ("Form"). *Id.* at 1113, 1117. This interpretation of the contract was confirmed by the parties' course of dealing because the golf association "ha[d] required caddies to wear bibs for decades." *Id.* at 1117. Any ambiguity as to whether the Form required the caddies to wear bibs was resolved by the caddies' concession that the tour had required them to wear bibs for decades. *Id.* at 1118.

"Considering the parties' course of dealing advances California law's 'fundamental goal of contract interpretation,' namely 'to give effect to the mutual intent of the parties as it existed at the time of contracting.'" *Hicks*, 897 F.3d at 1118 (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014-15 (9th Cir. 2012)).

In the present case, although CSC avers that the parties' course of dealing demonstrates that RBB2 breached the contract, CSC alleges no facts to support this assertion. CSC claims that RBB2 knew that CSC was entitled to payment for certain costs and expenses and that RBB2 breached the contract by not paying it those amounts. However, it is undisputed that CSC collected the laundry service revenue, calculated applicable deductions, and paid RBB2 the appropriate percentage of adjusted revenue. ECF No. 14-3, ¶ 3 & Schedule A. Nowhere in the parties' course of dealing has RBB2 been responsible for remitting payments to CSC. Rather than the parties' course of dealing

8

demonstrating that RBB2 breached the contract, if anything, the alleged course of dealing shows that CSC was solely responsible for calculating and submitting rent payments to RBB2.

*CSC has not sufficiently pled that it has performed under the contract*

Under California law, to state a claim for a relief for breach of contract, the party alleging breach must plead that she performed or was excused from performing. *See DCF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). CSC makes only a conclusory statement of the performance element of the breach of contract claim: "CSC has performed its duties under [the] lease agreement by providing the laundry services as described therein . . . ." ECF No. 27, Counterclaim ¶ 23. This threadbare recital of performance element does not meet the pleading requirements to survive a motion to dismiss. *See Iqbal*, 566 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

For these reasons, the contract is not reasonably susceptible to CSC's interpretation that RBB2 breached the contract by failing to remit the alleged overpayments, and CSC's breach of contract claim is dismissed for failure to state a claim for relief.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). If the court concludes that dismissal under Rule 12(b)(6) is warranted, the court should not dismiss the complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

The Court cannot conclude it is impossible for CSC to cure the counterclaim's defects by amendment. Thus, the breach of contract counterclaim is dismissed with leave to amend.

### 2. CSC's Quasi-Contract Claim for Restitution Fails to State a Plausible Claim for Relief.

Next, Defendant CSC brings a quasi-contract counterclaim for restitution as an alternative to its breach of contract claim. CSC avers that it conferred a benefit on RBB2 by paying more rent than was contractually due. ECF No. 27, Counterclaim ¶ 30. This occurred by CSC not deducting the full amount that it was legally entitled and by "not collecting certain guaranteed minimum payments from [RBB2] prior to May 2017." *Id.*

"Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient . . . ." *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011). A quasi-contract claim for restitution may be available when a party has been unjustly conferred a benefit as through mistake, fraud, coercion, or request, such that it would be unjust for the recipient to retain the benefit. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

*Existence of a Binding Agreement*

"[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996); *see also Doctors Med. Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*, 2011 WL 1438156, at *16-*17 (E.D. Cal. 2011). When parties have an actual contract covering a subject, a court cannot substitute its own concept of fairness regarding that subject in place of the parties' contract. *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1419-20 (1996). However, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride*, 123 Cal. App. 4th at 388.

In the present case, CSC's quasi-contract counterclaim fails to allege the absence of a binding agreement between the parties or that the contract was otherwise unenforceable. CSC alleges that

"[RBB2] had knowledge of and enjoyed the benefits conferred upon it by CSC, including receipt of more money and greater value than CSC *contractually* owed [RBB2]." ECF No. 27, Counterclaim ¶ 31 (emphasis added). Here, CSC acknowledges the existence of a valid contract which forecloses the possibility of recovery under a quasi-contract claim for restitution. In CSC's quasi-contract claim, it essentially complains that the contract between the parties was unfair to CSC and CSC paid more in rent than required. This is not the type of allegation suitable for a quasi-contract claim for restitution. This Court will not substitute its concept of fairness for contractual terms agreed-upon by the parties. *See Hedging Concepts, Inc.*, 41 Cal. App. 4th at 1419-20.

Accordingly, CSC's quasi-contract counterclaim is improperly pled, and it is dismissed with leave to amend.

### 3.    CSC's Claim for Declaratory Relief

CSC also requests that the Court declare that CSC was entitled to implement the Administrative Fee and that CSC was entitled to deduct additional costs from the rent even prior to instituting the Administrative Fee. ECF No. 27, Counterclaim ¶¶ 37-43. RBB2 argues that this general request serves no useful purpose and should be denied.

Injunctive relief is a remedy and not in itself a cause of action. *See McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 964 (N.D. Cal. 2012). A cause of action must exist before injunctive relief may be granted. *Id.* A claim for declaratory relief becomes duplicative and unnecessary when it is commensurate with the relief sought through other causes of action. *Id.* Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (quoting *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984)).

CSC's claim for declaratory relief is remedial in nature rather than a stand-alone cause of action. *See Lewis v. Trans Union, LLC*, 2013 WL 1680639 at *5 (E.D. Cal. 2013). Therefore, CSC's

counterclaim for declaratory relief fails to state a cause of action. Similarly, CSC makes no allegations that the declaratory relief would accomplish the elements set forth in *Guerra*. The declaratory relief claim is dismissed as unnecessary and duplicative of CSC's other counterclaims. If the defects in CSC's pleadings are cured, it may seek declaratory relief as a remedy under those claims.

## IV. <u>CONCLUSION</u>

CSC's cause of action for declaratory relief is dismissed as unnecessary and duplicative of the remaining counterclaims. The remaining counterclaim for breach of contract and, in the alternative, the quasi-contract counterclaim for restitution, are dismissed with leave to amend. CSC shall have 21 days to amend their counterclaims or to file a notice indicating they do not intend to amend. Plaintiff shall have 21 days from the date of CSC's filing to file a responsive pleading or appropriate motion.

The Court has limited resources. Should leave be taken, the Court will assume that it is the best and final effort. No further leave will be given.

IT IS SO ORDERED.

Dated: __**August 19, 2019**__                    _____**/s/ Lawrence J. O'Neill**_____
                                           UNITED STATES CHIEF DISTRICT JUDGE